UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

THOMAS PETRAS,

    Plaintiff,

v.                                      CASE NO. 5:17-cv-00073-JSM-PRL

OCWEN LOAN SERVICING, LLC,

    Defendant.

_____/

**OCWEN LOAN SERVICING, LLC'S MOTION TO STAY
PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW**

Defendant Ocwen Loan Servicing, LLC ("Ocwen"), respectfully moves this Court to stay this action until such time as *ACA International v. Federal Communications Commission*, No. 15-1211 (D.C. Cir.) ("*ACA*"), currently pending before the United States Court of Appeals for the District of Columbia, is decided, as this decision will be potentially dispositive of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, (hereinafter "TCPA") claim in this action. The D.C. Circuit held oral argument in *ACA* on October 19, 2016, and a decision is expected in the next few weeks or months. For the following reasons, Ocwen requests that this action, including any further discovery that might be allowed, be stayed pending the *ACA* decision.

**INTRODUCTION**

It is well settled that this Court has the inherent power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-

55 (1936). Here, a stay of the proceedings pending the D.C. Circuit's decision in *ACA* would conserve the resources of the Court, parties, and counsel by awaiting essential guidance from the D.C. Circuit as to whether the manually dialed calls at issue in this case, which were placed from a telephone system that did not have the present capacity to randomly or sequentially call phone numbers, constitute calls placed by an automatic telephone dialing system ("ATDS") under the TCPA.

Courts in this Circuit, as well as numerous others, have stayed proceedings pending a decision by the D.C. Circuit in *ACA* that will impact the litigation. *See, e.g., Coatney v. Synchrony Bank*, No. 6:16-cv-389, 2016 WL 4506315 (M.D. Fla. Aug. 2, 2016) (J. Conway); *Ricks v. Allied Interstate, LLC, et al.,* No. 3:16-cv-00205-HES-PDB, 2016 WL 4505173 (M.D. Fla. July 11, 2016) (J. Schlesinger); *Shahin v. Synchrony Fin.,* No. 15-cv-2941-35-EAJ, 2016 WL 4502461 (M.D. Fla. Apr. 12, 2016) (J. Scriven); *Mackiewicz v. Nationstar Mortgage LLC.,* No. 15-cv-465-Orl-18GJK, 2015 WL 11983233 (M.D. Fla. Nov. 10, 2015) (J. Sharp)*; Jacobs v. Ocwen Loan Servicing, LLC,* No. 16-62318-Civ-Scola, 2017 WL 1733855 (S.D. Fla. Apr. 13, 2017). Accordingly, the Court should similarly stay this action pending a decision in *ACA*.

## BACKGROUND

**I.      The 2015 FCC Order Expanded the Definition of ATDS.**

Until recently, it had been unclear whether, to constitute an ATDS under the TCPA, equipment must have the present capacity at the time of use to generate random or sequential telephone numbers (*i.e.*, telemarketing equipment), or if it is sufficient for equipment to be merely capable of being modified to have those functionalities. Prior to

the 2015 FCC Order, numerous courts had reasonably adopted the narrower definition requiring "present capacity." *See Gillard v. Receivables Performance Mgmt., LLC*, No. 14-02392, 2015 U.S. Dist. LEXIS 70641, at *7–8 (E.D. Pa. June 1, 2015) (limiting TCPA's definition of an ATDS to how telephony operated when calls at issue were made, not how telephony functions generally); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1376 (S.D. Fla. 2014) (denying plaintiff's motion for summary judgment where plaintiff did not show "that these broadcasts are transmitted without human intervention"); *Hunt v. 21st Mortg. Corp.*, No. 12-cv-2697, 2013 U.S. Dist. LEXIS 132574, at *11 (N.D. Ala. Sept. 17, 2013) (holding that to meet the TCPA's definition of an ATDS, "a system must have a present capacity, at the time the calls were being made, to store or produce and call numbers from a number generator").

On July 10, 2015, after a contentious 3–2 party line vote, the FCC released an Order formally stating its interpretation of numerous provisions of the TCPA and expanding the law's scope in several areas, including its definition of an ATDS. *See Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 et al.*, CG Docket 02-278, WC Docket No. 07-135, Declaratory Ruling and Order, 30 FCC Rcd 7961 (2015) ("2015 FCC Order"). In the 2015 FCC Order, the FCC construed the definition of ATDS to include any equipment that *potentially* can be modified to generate random or sequential numbers. *See id*.

Two of the five FCC Commissioners, however, sharply dissented from the majority's conclusions:

> Rather than focus on the illegal telemarketing calls that consumers really care about, the *Order* twists the law's words even further to target useful

3

> communications between legitimate businesses and their customers. This *Order* will make abuse of the TCPA much, much easier. And the primary beneficiaries will be trial lawyers, not the American public.

*Id.* at *8073. The dissenting Commissioners further explained that, "under the *Order*'s reading of the TCPA, each and every smartphone, tablet, VoIP phone, calling app, texting app—pretty much any calling device or software-enabled feature that's not a 'rotary-dial phone'—is an automatic telephone dialing system." *Id.* at *8075. Accordingly, those Commissioners concluded that the majority had "impermissibly expand[ed] the statutory definition of an 'automatic telephone dialing system' . . . far beyond what the TCPA contemplated." *Id.* at *8087.

## II.     Challenge of the 2015 FCC Order in *ACA*.

Nine parties filed petitions challenging the 2015 FCC Order in various federal appellate courts, all of which were consolidated before the D.C. Circuit (the "Petition"). The Petition implicates a key issue presented in this case, namely the definition of an ATDS. Indeed, the Petitioners' opening brief on appeal presents the following question:

> Whether the FCC interpreted ATDS in a way that unlawfully turns on the equipment's potential rather than present abilities, nullifies the statutory random-or-sequential-number-generation requirement, and provides inadequate guidance to regulated parties . . .

*See* Joint Brief for Petitioners at 4, *ACA Int'l v. Federal Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. Nov. 25, 2015), Dkt. No. 1585568.

On October 19, 2016, the D.C. Circuit held oral argument in *ACA*, and the transcript indicates that the D.C. Circuit may well strike down portions of the 2015 FCC Order. The possibility that the 2015 FCC Order will be vacated, in whole or in part, is far from speculative, given that the Order deviated from the plain language of the TCPA—

4

thus not entitled to deference on appeal—and was the subject of strong dissents by two of the five Commissioners, both Republicans, including the current FCC Chairman following the change in party control of the executive branch. *See Fontes v. Time Warner Cable, Inc.*, No. CV14-2060-CAS, 2015 U.S. Dist. LEXIS 169580, at *12 (C.D. Cal. Dec. 17, 2015) ("[I]n light of the close divide amongst the FCC's commissioners and the fact that at least one commissioner believes the FCC's ruling is 'flatly inconsistent with the TCPA,' there is a legitimate possibility that the Court of Appeals may overturn that ruling.").

It is anticipated that the D.C. Circuit will issue a decision in *ACA* in early 2017. This ruling could either: (a) extinguish Plaintiff's TCPA claim entirely if the D.C. Circuit narrowly defines the term ATDS, (b) narrow the scope of the issues and discovery needed in this case, or (c) at minimum, clarify one or more legal issues at stake in this case.

## ARGUMENT

**I.     The D.C. Circuit Court's decision in *ACA* will shape the issues in this case.**

The TCPA claim requires Plaintiff to prove that Ocwen's calls were placed with an ATDS, a certain type of regulated equipment under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also Coatney,* 2016 WL 4506315, at *2. Therefore, the definition of an ATDS, one of the critical issues pending in *ACA*, is directly implicated in this litigation. Specifically, Plaintiff alleges that he received approximately 100 calls to his cellular telephone using an "automatic telephone dialing system" without consent. *See* Compl. at ¶¶ 22 and 31.

Ocwen maintains, however, and its call logs support, that all but two of the calls placed to Plaintiff's telephone were manually dialed and the telephone system used to place those manually dialed calls did not have the present capacity to randomly or sequentially call phone numbers. Attached as Exhibit A to this Motion is a copy of Ocwen's call logs, showing all calls placed through Ocwen's Aspect Dialing System ("Aspect") to Plaintiff's telephone number during the relevant time period. As demonstrated in Exhibit A, all but two of the calls were placed in manual mode. The evidence that will be developed through discovery and witness testimony will show that all calls placed in manual mode are dialed by an Ocwen agent physically inputting the number into either a hard phone located on the agent's desk or via a soft phone which is located on the agent's computer desktop screen. When Aspect is in manual mode, Aspect is completely incapable of dialing any phone number without the agent directly inputting the phone number. Therefore, Ocwen submits that the telephone system used to place the majority of calls at issue in this case is not an ATDS.

During oral argument on October 19, 2016, the D.C. Circuit's questioning suggested that at least two of the three judges were troubled by the FCC's definition of ATDS to include *potential* capacity. *See* Ex. B, Oct. 19, 2016 Hr'g Tr. 10:20–11:17 (Judge Edwards suggesting that it "makes no sense" to hold that a caller violated the TCPA by making a manual call with a device that has the capacity to make the call in an automated fashion). Judge Pillard, for example, gave a hypothetical demonstrating how broad the FCC's definition of an ATDS is:

> I can get an app, put it on my smartphone when I'm driving and if I did drive to work and I had a long commute I could put in half a dozen family

6

> members who I thought would be great to talk to, and without intervening have it dial through and find the person that was available to talk to me. After I'm done talking to them it would automatically dial the next, the next, the next.

*Id.* at 87:10–16.

The FCC was forced to concede that a smartphone equipped with an autodialing application as described by Judge Pillard would be considered an ATDS under the FCC's current definition. *Id*. at 87:17–19. The judges further pushed the FCC to admit that even if the autodialer function of a smartphone was not being used, because the smartphone has the mere *capacity* to autodial, a call from the smartphone to a person that had not provided prior express consent would be considered a violation of the TCPA. *Id*. at 75:3–76:16. Judge Edwards observed, however, that the actual text of the statute is concerned with the "use" of the equipment, not how the equipment "could be used." *See id*. at 9:16–18; 10:7–12.

Judge Edwards' and Judge Pillard's commentary during the oral argument indicates that the D.C. Circuit is examining the FCC's expansive definition of an ATDS. If the FCC's broad interpretation of "capacity" in the definition of ATDS is ultimately struck down, it may narrow Plaintiff's TCPA claim, or extinguish it entirely.

**II.     The relevant factors all weigh in favor of granting a stay.**

It is well settled that this Court has the inherent power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and the litigants.'" *Ricks,* 2016 WL 4505173 at *1 (quoting *Landis,* 299 U.S. at 254). In evaluating whether a stay is appropriate, this Court will consider the "prejudice to the non-moving party, whether the requested stay would simplify and

7

clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court." *Mackiewicz,* 2015 WL 11983233 at *1. Here, each factor weighs strongly in favor of staying this action.

      **A.**    **A stay would streamline the key legal issues and reduce the burden on the parties and the Court.**

*ACA* has the potential to drastically affect the nature of this action. In Plaintiff's Complaint ("Complaint") (ECF No. 1), Plaintiff alleges violations of the TCPA for approximately 100 calls purportedly placed to his telephone number between January 2016 and February 2017, which he alleges were placed after revocation or without consent. *See* Compl. at ¶ 31. Plaintiff further alleges violations of the Florida Consumer Collection Practices Act ("FCCPA"). However, the crux of both claims are the alleged 100 calls placed to Plaintiff's telephone number and his claim that each of those calls was placed with an ATDS. *Id.* At ¶¶ 22 and 31. As such, there is substantial overlap in the key factual issues, and the TCPA claim–with its potential for significant statutory damages–appears to be the driving factor for this litigation.

This case is in its early stages and both parties will need to engage in discovery prior to filing any dispositive motions or conducting a trial. This discovery will likely include the expenditure of significant time and resources focused on the nature of the calls at issue and Ocwen's telephone system, including the possible retention of experts. This Court also may be required to spend significant time and resources deciding summary judgment and pretrial motions targeted at addressing whether the calls and telephone system at issue meet the definition of an ATDS under the TCPA. Thus, the significant time and effort of both the Court and the parties may prove entirely

unnecessary on these issues based on the D.C. Circuit's ruling on the 2015 FCC Order. *Fontes*, 2015 U.S. Dist. LEXIS 169580, at *14 ("If the Court of Appeals were to issue an order vacating the FCC's ruling in significant part after these deadlines had passed it would likely render moot substantial efforts by the parties as well as many of the Court's rulings. Accordingly, in light of the risk of wasting the resources of the Court and the parties as well as the high degree of uncertainty in this area of law, the Court finds that a stay is appropriate").

Granting a stay will therefore spare the Court and the parties from the expenditure of time and resources that may ultimately be rendered irrelevant by the D.C. Circuit's decision. *See Ricks*, 2016 WL 4505173 at *2 ("[T]his Court agrees with [Defendant] that denial of the Motion [to Stay] could lead to unnecessary fees and expenses depending on the outcome in *ACA*."); *see also Errington v. Time Warner Cable Inc.*, No. 2:15cv02196, 2016 U.S. Dist. LEXIS 66317 (C.D. Cal. May 18, 2016) (staying case pending the decision in *ACA* because "Defendant may suffer hardship in conducting discovery"); *Adkins v. Credit Acceptance Corp.*, Case No. 2:16-cv-03343 (S.D. W. Va. Dec. 8, 2016), Dkt. No. 50 (granting a stay of discovery pending the *ACA* ruling). A stay would also allow this Court "to avoid issuing a dispositive Order in the midst of an uncertain legal environment." *Coatney,* 2016 WL 4506315, at *2. Simply put, "[a] stay will conserve both the Parties' and judicial resources and will help clarify any issues that remain for resolution." *Shahin,* 2016 WL 4502461*,* at *2.

### B. Ocwen will suffer hardship and inequity if this action is not stayed, whereas a brief stay would not prejudice Plaintiff.

As noted above, the crux of both claims are the alleged 100 calls placed to Plaintiff's telephone number and his claim that each of those calls was placed with an ATDS. Compl. at ¶¶ 22 and 31. As such, there is substantial overlap in the key factual issues that will be fleshed out in discovery, and the TCPA claim—with its potential for significant statutory damages—appears to be the driving factor for this litigation.

Requiring Ocwen to incur the costs to proceed on these claims, when *ACA* may significantly limit, or obviate entirely, the driving factor for this litigation will cause hardship and inequity to Ocwen. Whether or not the TCPA claim is successful turns on the question of whether manually dialed calls placed through Ocwen's Aspect system constitute TCPA violations. Depending upon how the D.C. Circuit rules, this claim could be extinguished entirely or, at a minimum, this Court would have the benefit of the D.C. Circuit's decision on evaluating this question. At the very least, this ruling will dictate the scope of the issues and discovery needed in this case and would streamline any trial. If this Court does not grant the requested stay and the parties are forced to proceed, there is a very real risk that Ocwen would incur unnecessary costs of defense, only to have this Court's decision later mooted by the D.C. Circuit's decision in *ACA,* thereby forcing both parties to incur additional unnecessary expenses in appealing this Court's decision.

In contrast, granting a stay will simplify the issues and promote judicial economy. With the benefit of the *ACA* ruling, the parties can engage in focused litigation based on the insight provided by the D.C. Circuit, thus reducing the burden of litigation on the parties and on the Court. *See Stewart*, 2014 WL 12614418, at *5; *Coatney,* 2016 WL

4506315, at *2.  As discussed above, whether Ocwen "used an ATDS when making telephone calls to Plaintiff is a threshold issue for liability under the TCPA and for the scope of discovery." *Coatney,* 2016 WL 4506315, at *2.  Accordingly, a stay "will help clarify the law, and will enable this Court to render a sound decision," while at the same time prevent potential undue hardship to Ocwen.  *Id*.

Moreover, Plaintiff cannot demonstrate that he will suffer any prejudice as a result of a brief stay of these proceedings.  The case is in its early stages of litigation and "[i]t is not likely that the stay will be lengthy given that *ACA* had been fully-briefed as of February 2016[.]"  *See Coatney*, 2016 WL 4506315, at *2; *see also Ricks*, 2016 WL 4505173 at *2; *Shahin,* 2016 WL 4502461*,* at *2.  As a result, any "potential prejudice is minimal." *Coatney*, 2016 WL 4506315, at *2.  Indeed, the minimal delay will result in no prejudice on Plaintiff's claims, when Plaintiff is seeking only monetary damages. Courts in this Circuit have held that a stay does not unfairly prejudice plaintiffs where, as here, they are seeking only monetary damages.  *See e.g., Sweepstakes Patent Co., LLC v. Burns*, No. 14-62351-CIV-Martinez-Goodman, 2015 U.S. Dist. LEXIS 181794, at *3-4 (S.D. Fla. Apr. 7, 2015).

Further, Plaintiff is also not suffering any continuing harm that would be exacerbated by a stay.  Ocwen has not made any further calls through Aspect to Plaintiff since January 11, 2017.  *See Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-cv-00514, 2014 U.S. Dist. LEXIS 116817, at *6 (E.D. Cal. Aug. 21, 2014) ("[B]ecause there is no indication that Plaintiff has received any text messages from Defendants since October 18, 2013, she is not suffering continuing harm and thus will not be prejudiced by a

stay."); *Gusman v. Comcast Corp.*, No. 13CV1049, 2014 U.S. Dist. LEXIS 69918, at *13 (S.D. Cal. May 21, 2014) ("Plaintiff will not be prejudiced since he stopped receiving calls in the Fall of 2013 and the case is in the early stages of litigation.").

Therefore, under these circumstances, any "potential prejudice is minimal," and far outweighed by the potential hardship to Ocwen and the risk of expenditure of unnecessary resources by the parties and the Court. *See Coatney*, 2016 WL 4506315, at *2.

## CONCLUSION

For the foregoing reasons, Ocwen requests that the Court stay this action pending the outcome of the D.C. Circuit's *ACA* decision.

Dated: May 15, 2017               Respectfully submitted,

                                  HUNTON & WILLIAMS LLP

                                  By: /s/ Abigail M. Lyle
                                  Abigail M. Lyle, FBN 41384
                                  1111 Brickell Avenue, Suite 2500
                                  Miami, Florida 33131
                                  Telephone: (305) 810-2500
                                  Facsimile: (305) 810-2460
                                  alyle@hunton.com
                                  *Counsel for Ocwen Loan Servicing, LLC*

## CERTIFICATION OF CONFERENCE

Pursuant to Local Rule 3.01(g), counsel for Ocwen and counsel for Plaintiff have conferred regarding the relief sought in the instant Motion, and Plaintiff indicated that he opposes the relief sought.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

By: /s/ Abigail M. Lyle
For Hunton & Williams LLP