UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

THOMAS PETRAS,

Plaintiff,

-vs-                                                   CASE NO.: 5:17-cv-00073-JSM-PRL

OCWEN LOAN SERVICING, LLC

Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PROCEEDINGS**

THOMAS PETRAS, the Plaintiff, by and through his undersigned counsel, hereby files his opposition to Defendant, OCWEN LOAN SERVICING, LLC's, Motion to Stay [Doc 15]. For the reasons set forth below, the Court should not stay this action pending a decision from the United States Court of Appeals for the District of Columbia Circuit in *ACA International, et al. v. Federal Communication Commission and United States of America*, Case No. 15-1211 (D.C. Cir. July 10, 2015) ("ACA International").

   I.   **Background**

On July 10, 2015, the Federal Communications Commission ("FCC") issued a ruling ("2015 FCC Order") clarifying certain definitions and provisions of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA"). Several companies, trade associations, and other business entities did not like the ruling and filed petitions with the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") seeking review of the 2015 FCC Order. These petitions were consolidated into the case of *ACA International*. Defendant suggests that the clarifications within the 2015 FCC Order will either potentially extinguish Plaintiff's claims, or dictate the scope of the issues and discovery needed in this case. Specifically,

1

Defendant takes issue with the definition of an automatic telephone dialing system ("ATDS"), *hoping* that the D.C. Circuit makes a determination favorable it its interest regarding the FCC's rulemaking. Defendant seeks an indefinite stay of this case pending the decision in *ACA International*. Defendant's Motion is built upon speculation and hypotheticals regarding what the D.C. Circuit *could* or *might* do at some unknown point in the future. Comparatively, the 2015 FCC Order is supported by previous FCC orders, years of legal precedent, and is entitled to significant deference. For the reasons set forth below, a stay of this case is unwarranted and would serve no purpose other than to unfairly prejudice Plaintiff and delay the litigation of this matter.

**II.     Legal Standard**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am.Co.*, 299 U.S. 248, 254 (1936). Whether to stay the proceedings is entrusted to the discretion of the district court. *See id.* 254-55 ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997), *citing Landis*, 299 U.S. at 255. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. *Landis* demands that when a litigant seeks to stay a proceeding pending the outcome of litigation in a wholly separate action[1], the litigant

---

[1] As the Defendant does in this instance.

>  must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.

*Id.* At 255. *See also Mims v. Wal-Mart Stores, Inc.*, No. 12-244, 2012 WL 12893691, at *2 (N.D. Ala. Apr. 13, 2012) (denying request for stay). Thus, in this matter, burden rests wholly on Defendant to justify why Plaintiff should be compelled to stand aside pending a decision in *ACA International* and Defendant has failed to present that justification.

In determining whether to grant or deny a stay, "courts consider whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, whether a stay will simplify the issues in question and trial of the case, whether discovery is completed and whether a trial date has been set." *Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.* United States District Court, WL 1037920 (M.D. N.C. 1998) *citing Target Therapeutics Inc v. SciMed Life Sys. Inc.*, U.S.P.Q.2d 2022, 2013 (N.D. Cal. 1995).

### III. Legal Analysis

It is likely that the Court has observed the abuse of stay motions that has become *en vogue* among the TCPA defense bar in the past few years. Defendant contends that an indefinite stay is warranted here because the forthcoming decision of the D.C. Circuit in *ACA International* has the *potential* to address issues that *could* impact the extent of Defendant's liability in this case. According to Defendant, the predominant issue before the D.C. Circuit is the definition of an ATDS, however it remains to be seen if the issue will be addressed. Further, even if the DC Circuit Court of Appeals alters the definition of ATDS it is unlikely to avoid any discovery or liability in this case as the allegations of the Complaint also involve independent violations of the

3

TCPA for the same calls based on Defendant's use of prerecorded and artificial voices on such calls. The Court should deny Defendant's Motion because the decision in *ACA International* is highly unlikely to impact, simplify or streamline the case. However, a stay would guarantee prejudice to Plaintiff. Plaintiff unfortunately has a long history of cardiac problems and such has necessitated the placement of five cardiac stents over the past six months alone in addition to other preexisting stents. His health is anything but guaranteed and the uncertainty of such alone presents a significant risk of prejudice to justify denial of a stay.

### A. The Timing of a Decision in *ACA International* Is Speculative and a Stay Would Prejudice Plaintiff

The timing of a future decision by the D.C. Circuit in *ACA International* is far too speculative to warrant a stay. Defendant cannot state with any certainty as to when a decision on the matter will be rendered. Neither Defendant nor anyone else can forecast when exactly the D.C. Circuit might make its decision. Since there is no indication when *ACA International* may be decided, Defendant is essentially seeking a stay of indeterminate length. "Within the Eleventh Circuit, stays of an indefinite nature have been found to be 'immoderate'" and accordingly denied. *Myron v. Rodriguez*, No. 3:06-cv-1061-J-TEM, 2008 WL 516753, *3 (M.D. Fla. Feb. 22, 2008) (*citing Trujillo v. Conovo & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000)); *see Roath v. Bank of New York Mellon*, No. 2:15-cv-286-FtM-38DN, 2015 WL 4349828, *2 (M.D. Fla. July 14, 2015) (denying motion for stay pending another court's ruling on a case, finding the requested stay was too indefinite in scope).

Perhaps more importantly, another independent basis for denying the indefinite stay sought by Defendant is the fact that the D.C. Circuit's decision regarding *ACA International* will not resolve the matter. Whichever party is unsuccessful in *ACA International* will likely appeal to the Supreme Court, thereby further extending the delay and prejudice to Plaintiff. *Lathrop v. Uber Technologies, Inc.,* No. 14-cv-05678-JST, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016) (denying motion to stay based on pendency of *ACA International*); *Schwyhart* v. *AmSher Collection Services, Inc.,* No. 2:15-cv-01175-JEO, 2016 WL 1620096, *3 (N.D. Ala. April 22, 2016) ("There is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite - and perhaps lengthy - delay were a stay to be granted here.") *Coniglio* v. *Iqual Corp. and Nationstar Mortgage, LLC,* No. 8:15-cv-2406-T-33- AEP, 2015 WL 8521288, at *1 (M.D. Fla. Dec. 3, 2015) ("Eleventh Circuit precedent establishes that a grant of certiorari by the Supreme Court does not in itself change the law…,"[u]ntil the Supreme Court issues a decision that actually changes the law, we are duty bound to apply this Court's precedent and to use it and any existing decisions of the Supreme Court to measure the likelihood of a plaintiff's success on the merits") (internal citations omitted).

Given the current status of *ACA International* and the appellate proceedings that will follow any forthcoming decision, the entry of a stay pending the resolution of *ACA International* would constitute a prejudicial and indefinite stay, which would derail this litigation and prejudice Plaintiff. *See CTI-Container Leasing Corp.* v. *Uiterwyk Corp.,* 685 F.2d 1284 (11th Cir. 1982)

(finding stay order imposed an indefinite delay on appellant's federal claim and effectively placed him out of court). Accordingly this Court should deny Defendant's Motion for Stay.

    **B. It is Highly Unlikely That The *ACA International* Appeal will Result in a Change in the Law as the Clarifications in the 2015 FCC Order Are Supported by Prior FCC Rulings and Court Decisions**

The clarifications in the 2015 Order regarding the definition of an ATDS have already been adjudicated and are in alignment with, and supported by, prior rulings from the FCC itself and decisions of federal courts across the country. The definitions at issue are not new; they have been adopted by numerous courts over the years, and will likely be upheld by the D.C. Circuit due to their long-standing history. The FCC has consistently implemented the TCPA and entered orders and rulings regarding the Act since 2003. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Report and Order, CG Doc. No. 02-278, 18 FCC Rcd. 14014 (July 2, 2003) ("2003 FCC *Order");* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, *FCC Declaratory Ruling, CG Doc. No. 02-278, 23 FCC Rcd. 559 (Jan. 4, 2008) ("2008 FCC Ruling").*

The FCC's explanation that "capacity" in the context of an ATDS includes equipment with the "potential ability" to store or produce telephone numbers to be called using a random or sequential number generator and to dial such calls is firmly rooted in the FCC's 2003 Order. *See* 2003 FCC Order at | 131. Thirteen years ago, in the 2003 FCC Order, the Commission explained that the definition of an ATDS includes equipment with the capacity - not the current capability -

to store or produce telephone numbers. *Id.* This definition and explanation were reiterated in the 2008 FCC Ruling. *See* 2008 FCC Ruling at | 12. Rather than add to or amend the "capacity" aspect of the TCPA, the 2015 FCC Order simply explained that a "present use" or "current capacity" test cannot be used to determine whether equipment presently has the requisite capacity to qualify as an ATDS. *See* 2015 FCC order at ‖ 10-16. For this reason, this Court should deny Defendant's Motion for Stay.

### C. The FCC's Regulations As To What Constitutes an ATDS Are Not Dispositive Of This Case and In Any Event Are Highly Unlikely To Be Overturned

Defendant failed meet a minimal threshold to request a stay, by failing to address the very pertinent fact that Plaintiff has alleged Defendant's calls used an artificial or pre-recorded voice as well as an ATDS. While a change to the FCC's definition of an ATDS might conceivably impact calls if they were only autodialed, it would have absolutely no effect for violations of the TCPA involving calls that also used a pre-recorded voice. *See Vaccaro v. CVS Pharmacy, Inc.,* 13- CV-174-IEG RBB, 2013 WL 3776927, at *1 n.2 (S.D. Cal. 2013)(noting that because the TCPA is "written in the disjunctive, plaintiffs can state a claim under the TCPA by alleging the use of (1) an 'artificial or prerecorded voice' or (2) an ATDS.").

Furthermore, Defendant also fails to fully explain the unpersuasive "capacity" argument it hangs its hat on with regards to the *ACA International* petitions. This "capacity" argument relies upon the questionable assertion that the highly-sophisticated, computerized automated dialing systems in use today (most of which can make millions of calls in a day, in a month)

supposedly lack the very basic "capacity" to "store or produce telephone numbers to be called, using a random or sequential number generator" because these systems are now programmed to generate lists of numbers using various criteria and to make calls from these lists. To explain the absurdity of this argument, it should be noted that Plaintiff's counsel routinely retains an expert who can attest that this "random or sequential" functionality can be accessed in most autodialers with the use of as little as a single line of code! The FCC regulation that Defendant criticizes merely allows the programmability of these autodialing systems to be taken into account in determining the "capacity" of these systems. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 30 F.C.C. Rcd. 7961, 7974 (2015) (clarifying a 2003 FCC Order to explain that its conclusion that a device could meet the definition of an automatic telephone dialing system "when paired with certain software" was a rejection of any 'present use' or 'current capacity' test."). Defendant's "capacity" argument is as illogical as to argue that a calculator is no longer a calculator if the "plus key" is pried off (despite the fact that such key could be easily replaced).

### D. Numerous Federal Courts Have Denied Motions to Stay Pending *ACA International*

Significantly, several federal courts - including the Middle and Southern Districts of Florida - have refused to stay TCPA cases based on the pendency of *ACA International*. In fact, several recent rulings in the middle district have involved Defendant in this case including *Ferrer v. Ocwen Loan Servicing, LLC* 08:16-cv-01994 (M.D. Fla. May 5, 2017) (text only order

denying a similar motion by Ocwen) and *Zuluga* v. *Ocwen Loan Servicing*, LLC 6:17-cv-00335 (M.D. Fla. May 3, 2017). There is a long history of denial of similar motions in the 11th Circuit, *see Rodriguez* v. *DFS Services, LLC,* 2016 WL 369052 (M.D. Fla. Feb. 1, 2016) (denying motion to stay based on pendency of *ACA International,* finding the challenges before the D.C. Circuit will have no effect on the viability of plaintiff's lawsuit); *Caudill v. Wells Fargo Home Mortgage, Inc.,* 5:16-cv-00066-DCR-EBA (E.D. Ky. July 11, 2016) (denying motion to stay based on pendency of *ACA International,* finding "that the length of the anticipated stay is uncertain."); *Hamm* v. *Wells Fargo Bank, N.A.,* 1:16-cv- 00778-MHC (N.D. Ga. September 7, 2016) (denying motion to stay based on pendency of *ACA International,* holding that "...although oral argument has been scheduled in the D.C. Circuit for October, there is no timetable for the litigation to conclude. The Court is unwilling to stay this action for an indefinite amount of time when it is uncertain to affect the outcome."); *Mancini* v. *JPMorgan Chase Bank, N.A.,* 2016 WL 1273185 (S.D. Fla. March 23, 2016) (denying motion to stay based on pendency of *ACA International,* finding that an indefinite stay that is solely in the interests of judicial economy is insufficient justification for stay); and *Leachman* v. *Discover Financial Services, LLC,* No. 15-cv-62120-PAS (S.D. Fla. Jan. 13, 2016) (finding, in part, "In light of the disputed relevance of the FCC's July 2015 Order, and the indeterminate timeline of its appellate review, Defendant's Motion to Stay pending appellate review of the FCC Order is denied.").

While numerous courts have premised the denial of motions to stay on the indefinite duration of the stay, others have referenced the fact that many of the issues the D.C. Circuit may review in *ACA International* have already been addressed in previous FCC Orders and case law predating the 2015 FCC Order. *See Adamo* v. *Synchrony Bank,* 6:16-cv-530-Orl-37GJK (M.D. Fla. July 6, 2016) (denying motion to stay based on pendency of *ACA International*, finding "the matter pending before the Circuit Court for the District of Columbia will be merely persuasive authority in the U.S. Court of Appeals for the Eleventh Circuit"); *See Schwyhart,* 2016 WL 1620096 (denying motion to stay based on pendency of *ACA International* because possibility the D.C. Circuit sets aside provisions of FCC Order is too speculative, any forthcoming decision will not have a direct impact, and the court was unwilling to indefinitely stay case); *Jones,* 2016 WL 3145072 (denying motion to stay based on pendency of *ACA International*, finding that potential for defendant to engage in greater discovery does not constitute one of the "rare circumstances" contemplated under *Landis*); *Rivera* v. *Exeter Finance Corp.,* No. 15-cv-01057-PAB-MEH-2016, 2016 WL 374523, at *2 (D. Col. Feb. 1, 2016) (denying stay based on potential decrease in evidentiary quality and party/witness availability, and finding the potential impact of *ACA International* "speculative at best."); *Kafatos* v. *Uber Technologies, Inc.,* No. 15-cv-03727-JST, 2016 WL 97489 (N.D. Cal. Jan. 8, 2016) (denying stay based on pendency of *ACA International* because, although the D.C. Circuit decision could clarify certain questions of law, the parties still require discovery on factual issue regardless of the outcome of *ACA International,* and because defendant did not show this is a rare circumstance in which a stay

pending the resolution of an appeal in another case is appropriate); *Lathrop,* 2016 WL 97511 (denying motion to stay based on pendency of *ACA International* because, *inter alia*, whichever party is unsuccessful in *ACA International* will likely appeal to the Supreme Court, thereby further extending the delay and prejudice to plaintiff); and *O'Hanlon,* 2016 WL 815357 (denying stay based on pendency of *ACA International* because it would cause substantial delay, issues pending before D.C. Circuit have already been litigated, and any forthcoming D.C. Circuit decision would not be binding). This Court should follow the precedent established by *Rodriguez,* 2016 WL 369052, *Mancini,* 2016 WL 1273185, *Leachman,* No. 15-cv-62120-PAS (S.D. Fla. Jan. 13, 2016), and the like-minded district courts reference above, and deny Defendant's Motion.

### E. It is Unlikely that the *ACA International* Appeal will Result in a Change in the Law as The 2015 Order is Entitled to Extreme Deference

Finally, Defendant's Motion fails to mention that when the D.C. Circuit eventually reviews the 2015 FCC Order, it will be subject to a deferential standard of review. When an FCC order is challenged as being "arbitrary, capricious, an abuse of discretion, or otherwise no in accordance with law," 5 U.S.C. 706(2)(A), the order will be upheld if the agency "articulated a rational connection between the facts found and the choice made." *ADX Commc'ns of Pensacola* v. *FCC,* 794 F.3d 74, 79 (D.C. Cir. 2015) (internal citations omitted). The review process will be "highly deferential" and the 2015 FCC Order will be presumed valid. *Vernal Enterprises, Inc.* v. *FCC,* 355 F.3d 650, 658 (D.C. Cir. 2004). In this circumstance, the D.C. Circuit will defer to the

FCC's interpretation of its own rules and reasonable application of its own precedents. *ADX Commc'ns of Pensacola,* 794 F.3d at 79. In other words, the D.C. Circuit will begin under the premise that the 2015 FCC Order is valid and will defer to the FCC's own definition of an ATDS, which is supported by previous court rulings and FCC Rulings. In light of the precedents established by the FCC and federal courts throughout the country, and the deference that must be extended to the 2015 FCC Order, it is unlikely that the D.C. Circuit's decision in *ACA International* will impact this case. Even if the D.C. Circuit's decision were to have an impact on the present matter, (which Plaintiff does not anticipate that it will), any issues that may arise can be addressed through the parties' dispositive motions. *See Blanding v. Synchrony Bank,* 8:15-cv-02577- EAK-MAP (M.D. Fla. September 16, 2016) (Endorsed Order denying Defendant's Motion to Stay and holding that "the parties may address any decision by the D.C. Court of Appeals through their dispositive motions"). For this final reason also, the Court should deny Defendant's Motion to Stay.

### IV. CONCLUSION

For all the above reasons, Defendant's Motion to Stay Proceedings should be denied.

Respectfully submitted,

 */s/ Jared M. Lee*
Jared M. Lee, Esquire
Florida Bar No.: 0052284
Morgan & Morgan, Tampa, P.A.
20 N. Orange Ave., Ste. 1600
Orlando, FL 32801
Tele: (407) 420-1414

                                        Fax:  (407) 245-3485
                                        Email:  JLee@ForThePeople.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and that a Notice of this filing will be sent to the all Counsel of record by operation of the Court's Electronic Filing System.

                                        */s/ Jared M. Lee*
                                        Jared M. Lee, Esquire